UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel., NEVADANS AGAINST FRAUD ON THE GOVERNMENT, LLC | Case No.2:24-CV-2277 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| TERRIBLE HERBST, et al., | |
| Defendant(s). | |

Presently before the court is a motion to dismiss relator's complaint, filed by defendants Terrible Herbst, Inc., JETT Gaming, LLC, ETT I, LLC, ETT-AZ, LLC, ETT-CA, LLC, Blue Diamond & Durango, LLC, Decatur & Silverado, LLC, Herbst-Johns, LLC, HER-COLE, LLC, HER-DEL 1, LLC, HER-GREEN, LLC, HER-LOZ 1, LLC, HER-MOR, LLC, Jean Ventures, LLC, HHT 12 LLC, FSP Partners, LLC, Herbst Supply Co., Inc., HER-DEL 2, LLC, JH, Inc., Terrible Herbst Washington UT, LLC, THSR Holdings, LLC, and TPC OPCO, LLC (collectively, "defendants" or the "Terrible Herbst Defendants"). (ECF No. 35). Relator Nevadans Against Fraud on the Government, LLC filed a response (ECF No. 39), to which defendants replied (ECF No. 51).

Also before the court is the defendants' motion and request for judicial notice regarding documents in support of their motion to dismiss the complaint. (ECF No. 36). Relator filed a response. (ECF No. 40).

## I.    Background

### A.    The Paycheck Protection Program

On March 27, 2020, the U.S. President signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") into law.  (ECF No. 1 ¶ 53).  The CARES act provided funding for and gave the authority to the Small Business Administration ("SBA") to establish a new loan program, the Paycheck Protection Program ("PPP") to support small businesses adversely impacted by the COVID-19 pandemic.  (*Id.*).

Relevant here, the CARES Act permitted the SBA to guarantee 100% of PPP loans and forgive up to the full principal amount of qualifying PPP loans.  (*Id.* at 54) (citing 15 U.S.C. § 636(a)(2)(F)).

Only certain businesses were eligible for a PPP loan.  For example, enumerated businesses employing not more than the greater of 500 employees or the applicable NAICS size-standard, qualified for a PPP loan(s).  15 U.S.C. § 636(a)(36)(D)(i)(I), (II).  Affiliated entities, as defined by the SBA's affiliation rules,[1] were subject to the headcount restriction.  *See* SBA FAQ Question 5; 13 C.F.R. § 121.103 (SBA affiliation rules); SBA FAQ Question 31 (advising that borrowers must "review[] applicable affiliation rules to determine eligibility").

In applying for loan forgiveness, applicants were required to make a number of certifications, including that

(a) they understood the contents of each form;

(b) that they were eligible to receive the PPP loan;

---

[1] Per 13 C.F.R. § 121.103, "concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties control has the power to control both."  § 121.103(a).  The existence of control is the inquiry here, not whether it was actually exercised.  *Id.*

(c) that the applicant "employs no more than the greater of 500 employees, or if

applicable, the size standard in number of employee established by the SBA in 13

C.F.R. § 121.201 for the applicant's industry;"

(d) that the applicant was undergoing economic uncertainty making the loan request

necessary; and

(e) that the information provided by the applicant was true and accurate in all material

respects.

(ECF No. 1 ¶¶ 78–81); SBA Form 2483.

Importantly, loan applicants could apply to have their loans forgiven.  They were required to make additional certifications in the application for loan forgiveness, including that the information provided was true and accurate.  (ECF No. 1 ¶¶ 84–86).

B.      Relator's Allegations & Procedural History

Relator alleges that defendants, despite not being eligible for PPP loans, applied for and obtained PPP loans.  (*Id.* ¶ 93).  Relator claims the defendants are affiliates of each other within the meaning of 13 C.F.R. § 121.103 and were therefore not eligible because they employed more than 500 employees, and no other category of eligibility applies. (ECF No. 1 ¶¶ 96–115).  Relator alleges that each of the defendants failed to list in their PPP applications any of the other defendants as having "common management" or a "close relationship" with them.  (*Id.* ¶ 100).

Between March 29 and April 29, 2020, all of the defendants were approved for PPP loans in the collective amount of $12,678,166.  (*Id.* ¶ 102).  Each later applied for loan forgiveness and each of their loans was given.  (*Id.* ¶ 103).

On December 9, 2024, relator filed suit on behalf the United States pursuant to the *qui tam* provisions of the False Claims Act.  The complaint asserts two claims for relief: one for presenting

or causing to be presented a false or fraudulent claim under 31 U.S.C. § 3729(a)(1)(A); and the other for causing false statements or records material to false claims to be made or used under 31 U.S.C. § 3729(a)(1)(B).

On April 9, 2025, the court filed an order granting notice of election to decline intervention. (ECF No. 7).  Thereafter, defendants, except for Western Alliance Bank,[2] filed the motion to dismiss that is now before the court.  (ECF No. 35).  No oral argument was conducted.  *See* Local Rule LR 78-1.

**II.    Legal Standards**

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Id.*  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does

---

[2] Relator voluntarily dismissed defendant Western Alliance Bank on February 2, 2026.  (ECF No. 61).

- 4 -

not meet the requirements to show plausibility of entitlement to relief.  *Id.*

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss.  *Id.*  First, the court must accept as true all of the allegations contained in a complaint.  However, this requirement is inapplicable to legal conclusions.  *Id.*  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 678.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief."  *Id.* at 679.  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court held as follows:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

A heightened pleading standard applies to claims of fraud.  Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, "[t]he complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

**III.   Judicial Notice**

The court, on a motion to dismiss, is limited to the allegations contained in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Under Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to a reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Irrelevant documents will not be judicially noticed. *See Jardine-Byrne v. Santa Cruz Cty. v. Bd. Of Law Library Trs.*, 735 Fed. App'x 417, 417–18 (9th Cir. 2018) (citing *Lee*, 250 F.3d at 689). "Publicly accessible websites and news articles are among the proper subjects of judicial notice. *Hammerling v. Google LLC*, 2022 U.S. Dist. LEXIS 217020, at *10–11 (N.D. Cal. Dec. 1, 2022).

. . .

"Courts may not, however, take 'take judicial notice of disputed facts contained in [] public records." *Id.* (citing *Khoja v. Orexigen Thrapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018)).

Defendants request that this court take judicial notice of:

(a) business entity information for relator located on the "Entity Search" subdomain of SilverFlume, a business portal provided by the Nevada Secretary of State (ECF No. 36, Ex. A);

(b) the "PPP Borrower Search" page from www.PandemicOversight.gov, which is an official website of the United State government, as displayed on or about the time relator filed its complaint. Defendants obtained the archived information from that time using the Wayback Machine (web.archive.org). (*Id.*, Ex. B).

(c) publicly available company information for the defendants found on Bizapedia.com. (*Id.*, Exs. C–Y).

Relator's opposition does not dispute the judicial noticeability of Exhibits A and B, which contain information posted and provided on government websites. The court grants defendants' request for judicial notice as to Exhibits A and B. *See* Fed. R. Evid. 201(b)(2); *Bayview Loan Servicing, LLC v. Shadow Springs Cmty. Ass'n*, 425 F. Supp. 3d 1275, 1284 (D. Nev. 2019) (court may take judicial notice of information made publicly available on government website if website's authenticity and accuracy of information is not disputed).

The court will judicially notice the Bizapedia.com webpages (Exs. C–Y) for the limited purpose of analyzing the parties' public disclosure doctrine arguments. It need not determine the factual accuracy or reliability of the contents of the site. Defendants' purpose in requesting judicial notice is to argue that it is "publicly disclosed" information, which this court determines it is not. *See infra* section IV.A.1.ii.

- 7 -

**IV.    Discussion**

The FCA imposes civil liability on anyone who "knowingly presents" a "fraudulent claim for payment" to the federal government and who "knowingly makes" a "false record or statement" material to a fraudulent claim.  31 U.S.C. § 3729(a)(1)(A)-(B).  Private individuals, referred to as "relators," may bring suit on behalf of the government against those who violate the FCA.  *Id.* § 3730(b)(1).

In this case, the relator alleges that the defendants knowingly made false statements and submitted false certifications on PPP loan applications.  Defendants move to dismiss the complaint on two grounds: (1) the public disclosure bar and (2) failure to state a claim upon which relief can be granted.  The court discusses each ground in turn.

A.    Public Disclosure Bar

The public disclosure bar precludes a relator from bringing an FCA action based on public information.  It mandates that:

> The court shall dismiss an action or claim under [this section], unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i)    in a Federal Criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii)   in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii)  from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2010).

. . .

- 8 -

Analysis of the public disclosure bar is a two-step process: First, the court must determine whether there has been a "prior public disclosure" of the "allegations or transactions" underlying the qui tam suit.  *A-1 Ambulance Serv. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000), superseded by statute on other grounds as stated in *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154 (9th Cir. 2024).  "If and only if there has been such a public disclosure, the court then inquires whether the relator is an 'original source' within the meaning of 3730(e)(4)(B)."  *Id.*

In the Ninth Circuit, the public disclosure bar is triggered where: (1) the disclosure at issue occurred through a channel specified in the FCA statute; (2) the disclosure was "public;" and (3) the relator's action is "based upon" the allegations or transactions disclosed.  *United States v. Allegan, Inc.*, 46 F.4th 991, 996 (9th Cir. 2022).

> *1.    Whether the Disclosures Occurred Through Channels Specified in the FCA Statute and Whether the Disclosures Were Public.*

Relator's allegations draw from PPP data provided by PandemicOversight.gov and republished by USA Today, (ECF No. 1, Exs. 35–45, 47–50, 52, 54, 56–57, 59, 61–67, 69–70), as well as business entity information provided by various secretaries of state (ECF No. 1, Exs. 1, 3–6, 8, 10–12, 14, 16–25, 27–32, 46, 51, 53, 55, 58, 60, 68).  Defendants assert that their business entity information was publicly disclosed on Bizapedia.com during the relevant time.  Bizapedia uses information from tertiary sources, such as publicly available secretary of state information, in building business entity profiles (ECF No. 36, Exs. C–Y).

Relator does not dispute that "the SBA PPP data set (published in USA Today and PandemicOversight.gov) is publicly disclosed," thereby satisfying the second prong of the analysis.  (ECF No. 39 at 15).  It argues, rather, that the publications were not through a qualifying channel under the FCA statute.

### i.   Federal Report

This court concludes, as have others in the Ninth Circuit, that "PandemicOversight.gov" constitutes a 'Federal Report' within the meaning of the FCA."  *See United States ex rel. Relator LLC v. Sunshine*, No. 8:23-cv-00134-JVS-ADS, 2025 WL 2428470, at *4, *6 (C.D. Cal. June 30, 2026); *United States ex rel. Relator LLC v. Kellog*, No. 23-cv-118-CAB-BLM, 2025 WL 897439, at *3-*4 (S.D. Cal. Mar. 24, 2025); *United States ex rel. Relator LLC v. Erskine*, No. 22-cv-1158, LL, AHG, 2025 WL 796621, at *4, *6 (S.D. Cal. Feb. 25, 2025); *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-cv-00924-TLN-CDB, 2024 WL 3666470, at *4–*5 (E.D. Cal. Aug. 6, 2024).

### ii.   News Media

Defendants claim that information available on the USA Today website regarding their PPP loans constitutes "news media" within the meaning of the public disclosure bar.  They argue that there was a qualifying public disclosure of the secretary of state filings because Bizapedia.com republished the relevant business information on its site.  Further, they contend that, although secretary of state websites are not "technically within the ambit of the public disclosure bar," they should be considered "news media" in this case.  (ECF No. 35 at 22).

The statute does not define "news media," and its scope and meaning are largely unexplored in this district and in the Ninth Circuit Court of Appeals.  The first step, therefore, is to look to the ordinary meaning of the term "news media."  *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011).

. . .

Cambridge University dictionary defines "news media" as "forms of communication, including the internet, newspapers, magazines, television, etc., that collect and give information about current events, considered as a group[.]"[3]

The ordinary meanings of "news" and "media," on their own, are also instructive. Merriam Webster dictionary defines "news" as (a) a report of recent events; (b) previously unknown information; or (c) something having a specified influence or effect. It also defines "news" as (a) material reported in a newspaper or news periodical or on a newscast; or (b) matter that is newsworthy.[4] "Media," as defined by Merriam Webster, is a "medium of cultivation, conveyance, or expression."[5] To clarify, "medium" is further defined as a media "channel or system of communication, information, or entertainment."[6]

Considering these definitions, "news media" is best understood as including channels of information used to convey information about newsworthy, or current events, or other matter typically found in a newspaper, broadcast, or similar news source. A specified scope like this does not extend to all forms of information found on the internet.

As a matter of common sense "news media" "cannot encompass *all* online information[.]" *See United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. 17-cv-1694-PSG-SSx, 2019 U.S. Dist. LEXIS 125352, at *33 (C.D. Cal. July 16, 2019), reversed and remanded on other grounds by 854 Fed. App'x 840 (9th Cir. 2021). Such a reading would run

---

[3] *news media*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/dictionary/english/news-media (last visited Feb. 23, 2026).

[4] *news*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/news (last visited Feb. 23, 2026).

[5] *media*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/media (last visited Feb. 23, 2026).

[6] *medium*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/medium (last visited Feb. 23, 2026).

contrary to the purposes underlying the public disclosure bar, and indeed the FCA itself. *See United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 742 (9th Cir. 1995) ("[T]he purpose of the *qui tam* provisions of the False Claims Act is to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward.") (cleaned up).

The court recognizes that other courts have more liberally applied the "news media" provision to information available on the internet. *See, e.g.*, *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 813 (11th Cir. 2015) (noting that other courts "have determined that the term includes publicly available websites"); *United States ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012); *Sunshine*, 2025 WL 2428470, at *4 (finding that ProPublica.org qualifies as "news media"). However, these cases did not analyze the meaning and scope of "news media." Rather, they rely heavily on the Supreme Court's description of the provision as having a "broa[d] sweep." *Graham Cnty. Soil & Water Conservation District v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010); *see also Schindler Elevator*, 563 U.S. at 408. They do not grapple with the fact that the Supreme Court also mandated looking to the ordinary terms of provisions undefined by the Act. *Schindler Elevator*, 563 U.S. at 407.

Moreover, although the public disclosure bar has a broad sweep, its scope has been narrowed over time, indicating Congress' intent to more precisely define what constitutes a "public disclosure." *Silbersher*, 89 F.4th at 1160 (noting the 2010 amendment changed the bar from *any* "criminal, civil, or administrative hearing," or any "report, hearing, audit, or investigation," to only those that are Federal); *see also Schindler Elevator*, 563 U.S. at 412 (explaining that the public disclosure bar replaced the broader Government knowledge bar).

As discussed above, "news media" encompasses channels of information used to convey information about newsworthy, or current events, or other matter typically found in a newspaper, broadcast, or similar news source.  This definition precisely reflects Congress' intent "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *United States ex rel. Sam Jones Co., LLC v. Biotronic, Inc.*, 152 F.4th 946, 950 (9th Cir. 2025) (citing *Graham Cnty.*, 559 U.S. at 295).

Applying this understanding, USA Today would be considered "news media" as contemplated within the meaning of the FCA statute.  USA Today is a national newspaper.  It republished information from PandemicOversight.gov, using a searchable database that it designed and created for that specific purpose.  This database was certainly newsworthy, as well, as it was created to report on who received loans from the SBA under the Paycheck Protection Program.

Bizapedia.com, on the other hand, is not "news media."  To say that republishing business information is "newsworthy" is a stretch, even by the "broad sweep," that the court applies to the public disclosure doctrine.  *See Schindler Elevator*, 563 U.S. at 408.  Business information is also not a "current event," as the general public understands that word.

Perhaps most relevant here, Bizapedia.com is not a newspaper, broadcast, or similar news source.  The court recognizes that we live in an age where news comes from a variety of sources beyond those traditionally recognized—Instagram Reels, TikTok, X (formerly known as Twitter), and podcasts—have become increasingly popular sources of information for the general public.[7] Key here, is that the general public understands these as news sources, whereas there is not such a consensus for platforms like Bizapedia.

---

[7] *Social Media and News Fact Sheet*, PEW RSCH. CTR. (Sept. 25, 2025), https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet/.

Defendants acknowledge that secretary of state websites are "not typically encompassed by the public disclosure bar," but request that the court consider them as barred in this context, citing to a case from the Northern District of West Virginia. *See Seikel v. Alvarez*, No. CR 1:23-cv-01, WL 1315869 (N.D. W. Va. Mar. 27, 2024). For the reasons addressed above, the court declines to so broadly construe the term "news media" to encompass the secretary of state websites.

In sum, the PPP loan information found on PandemicOversight.gov and USA Today is a public disclosure, while the business entity information found on Bizapedia.com and the secretary of state websites is not.

> 2. *Whether Relator's Allegations Are "Based Upon" The Publicly Disclosed Transactions.*

If "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," then the court shall dismiss the action. 31 U.S.C. § 3730(e)(4)(A); *see United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016). In the Ninth Circuit, a "transaction" or "allegation" is "substantially the same" as the FCA claim when it reveals both the misrepresented state of affairs and the true state of facts such that an observer could reasonably infer that fraud has been committed. *Sam Jones Co.*, 152 F.4th at 957; *United States ex rel. Found. Aiding the Elderly v. Horizon W., Inc.*, 265 F.3d 1011, 1015 (9th Cir. 2001). In other words, the issue is whether the public disclosure contained enough information to put the government "on notice to investigate the fraud before the relator filed his complaint." *United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018); *United States ex rel. Hernandez v. ScribeAmerica, LLC*, No. 2:21-cv-043240CV (ASx), 2025 U.S. Dist. LEXIS 271142, at *33 (C.D. Cal. Nov. 19, 2025). When the "critical mass of the underlying facts…in the qui tam complaint have been disclosed," the public disclosure bar applies. *Sam Jones Co.*, 152 F.4th at 957 (citing

*Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 703 (9th Cir. 2017)).

The pertinent question is whether PandemicOversight.gov and USA Today disclose a misrepresented state of facts and a true state of facts as to defendants' alleged fraud.  In asserting that defendants knowingly presented, or caused to be presented, false claims for payment to the SBA and knowingly made a false record or statement, relator relied on the following publicly disclosed information from USA Today as the true state of affairs: The defendants' (1) company name and address; (2) jobs reported; (3) NAICS code and industry; (4) loan number; (5) date loan was approved; (6) loan status; (7) loan term; (8) lender; (9) loan amount; (10) loan forgiveness date; and (11) loan forgiveness amount.

Relator alleges, in part, that defendants misrepresented that they were "small businesses concerns" under SBA rules and omitted information regarding their affiliated businesses on their PPP loan applications.  The employee headcount for *each* defendant is publicly available information listed on USA Today and PandemicOversight.gov.  (ECF No. 1, Exs., 35, 37–44, 48, 49, 56, 62–66, 69).  Tallying these publicly reported jobs reveals that, if relator's allegations are true, the defendants collectively employed 1,455 individuals at the relevant time, which is far above the maximum allowed for PPP eligibility.  (*Id.* ¶ 101).

But adding up the jobs reported before determining whether the defendants were affiliated puts the cart before the horse.  The SBA affiliation rules at issue here require information about the officers or close relatives involved in the businesses.  *See* 13 C.F.R. 121.301(f)(3), (f)(4).  As noted above, this information was not "publicly disclosed" within the meaning of the FCA disclosure bar.  *See supra* section IV.A.1.ii.

. . .

. . .

Defendants point out that the same borrower address is listed for eighteen of the defendants (5195 South Las Vegas Blvd., Las Vegas, NV 89119).[8]  Sharing a common address does not, by itself, indicate fraud, as it is common for businesses to share the same address.  Moreover, it is the identity of the officers, not the sharing of a common address, that is central to the inquiry of whether the defendants were affiliated under SBA rules.

Simply put, the USA Today and PandemicOversight.gov websites do not contain both a "misrepresented state of facts and a true state of facts" from which fraud can be inferred.  *See Silbersher*, 89 F.4th at 1167; *see also Allergan*, 46 F.4th at 1167.

### 3.  Original Source Exception

Because no qualifying public disclosure occurred, the court does not reach the issue of the "original source" exception.  *See A-1 Ambulance Serv.*, 202 F.3d at 1243.

### B.    Failure to State a Claim

The court next considers whether the complaint meets the pleading standards set out in the Federal Rules of Civil Procedure.

Defendants argue that relator fails to allege fraud with the particularity required under Federal Rule of Civil Procedure 9(b), but the court is not persuaded.  *See Neubronner*, 6 F.3d at 671.  Relator specifically alleges that between March 29 and April 29, 2020, defendants applied for (and thus certified their eligibility for) a total of $12,678,166 in PPP loans amongst themselves.  (ECF No. 1 ¶ 99).  They received the benefit of these PPP loans, as well as the benefit of having these loans approved.  (*Id.* ¶¶ 99, 103).  Relator alleges upon information and belief that in these

---

[8] Defendants request that the court take judicial notice of a Google map search of this address, arguing that the image that appears is evidence that the address is Terrible Herbst's headquarters.  The focus here is on "publicly disclosed" documents.  The defendants do not provide a legal argument as to how the Google map search would be "publicly disclosed" within the meaning of the statute.

applications, the defendants did not list "all of their affiliated companies," and that a headcount amongst the applications would reveal 1,455 employees (well above "small business concern" standards).  (*Id.* ¶ 101).

Finally, relator purports that the defendants falsely certified that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the [defendants]."  (*Id.* ¶ 118).  Relator does not provide additional factual support as to this contention within the same subsection.  However, in the immediately preceding section, it alleges that the defendants' "tangible net worth far exceeded $15 million on March 27, 2020," and that they "owned over 50 commercial properties in Nevada."  (*Id.* ¶ 113).  In signing these applications, relator would have certified their eligibility to receive them, and that all information provided was "true and accurate."  (*Id.* ¶ 80).

Defendant argues that relator "does not possess the actual PPP applications" or "a copy of the Affiliation Worksheet," (ECF No. 35 at 28), but this is not required for relator to meet the pleading standard in this case.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("the *Twombly* plausibility standard…does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.").

Next, defendants argue that the complaint should be dismissed because relator does not adequately plead scienter (i.e., a knowing violation of the FCA).  Relator alleges more than an innocent mistake or "mere negligent misrepresentation."  *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011); *see also* Fed. R. Civ. P. 9(b) (stating that scienter may be alleged generally).  It alleges submission of twenty-nine applications for PPP loans for which defendants

purportedly did not qualify.  (ECF No. 1 ¶ 102).  Relator argues that defendants knew they did not qualify because they were aware that they were affiliated (as defendants admit in these briefings), and despite this fact, they did not disclose these relationships to the SBA in the loan applications.  Considering these allegations, the court finds that relator sufficiently pleads scienter.

Finally, defendants argue that relator fails to factually support its assertion that the defendants did not meet the "alternative size standard" under 15 U.S.C. § 632(5).  This standard "uses maximum tangible net worth and average net income as an alternative to the use of industry standards."  15 U.S.C. § 632(5)(A).  A business could qualify for a PPP loan if, together with its affiliates, (1) the applicant's maximum tangible net worth is not more than $15 million and (2) the applicant's average net income after Federal income taxes for the two years preceding the date of application is equal to or less than $5 million.  *Id.* § (5)(B)(i)-(ii).

Relator alleges that "on March 27, 2020, [defendants] owned over 50 commercial properties in Nevada," and the equity they "had in their commercial properties and other assets greatly exceeded $15 million."  (ECF No. 1 ¶ 114); *see* 15 U.S.C. § 632(a)(5)(B)(i).  Additionally, relator alleges that the defendants' "average net income for the two fiscal years preceding the dates of their applications greatly exceeded $5 million a year."  (ECF No. 1 ¶ 115); *see* 15 U.S.C. 632(a)(5)(B)(ii).

Relator is silent as to the defendants' liabilities, which are generally relevant in determining maximum tangible net worth.  *See* 15 U.S.C. § 632(a)(5)(B)(i).  However, it asks the court for leave to amend the complaint to allege that defendants owned over 90 commercial properties valued at over $120 million when they took out PPP loans; and that after receiving PPP loans they had ample assets and income to purchase five commercial properties for $45.3 cash and three private jets for an estimated $22 million.  (ECF No. 39, Proposed Amended Complaint).  Relator

also intends to include private real estate purchases made by the Herbst family.  (*Id.*).

The court finds good cause to allow relator to amend its complaint.  However, it strongly cautions against including information about the Herbst family, as it is the *defendants'* net income and net worth in issue, not the Herbst family.  Specific support addressing liabilities is not required as this is information within control of the defendants.  The proposed amendments (except for those against the Herbst family) are sufficient to support the allegation, at this stage, that defendants did not qualify for the loans.  To the extent that relator does have specific factual support, it is encouraged to include such allegations in the proposed amended complaint.

## V.    Conclusion

Accordingly,

Defendants' motion for judicial notice is GRANTED to the extent noted in this order.  (ECF No. 36).

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the public disclosure bar does not prohibit this action from proceeding.

IT IS FURTHER ORDERED that the defendants' motion to dismiss (ECF No. 35) be, and the same hereby is, GRANTED without prejudice.  Relator has leave to amend its complaint according to the instructions set forth in this order.  It must seek leave to file the amended complaint within 21 days of this order.  *See* Local LR 15-1.

DATED March 4, 2026.

_____
UNITED STATES DISTRICT JUDGE